UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| MALLEIS, JOSEPH AND SHELLY,<br><br>    Plaintiffs,<br><br>    v.<br><br>LEWIS COUNTY, a Washington State County;<br>LEWIS COUNTY COMMUNITY<br>DEVELOPMENT DEPARTMENT, a Lewis<br>County, State of Washington, governmental<br>entity,<br><br>    Defendants. | **Case No.:  26-5453**<br><br><br><br>**VERIFIED COMPLAINT<br>AND JURY DEMAND RE REGULATORY<br>TAKING OF REAL PROPERTY** |

## I.    INTRODUCTION

1.1.    Plaintiffs Joe and Shelly Malleis ("the Malleises", by and through their counsel of record, bring this action under the Fifth Amendment of the United States Constitution's taking clause of private property (a regulatory taking when government regulations limit property usage so severely that it acts as a functional seizure of the property requiring "just compensation"); Article 1, Section 16 of the Washington State Constitution (prohibiting taking or damaging private property for public or private use without just compensation); and 42 U.S.C. § 1983 (property owners can bring takings claims against state or local government entities in federal court as civil rights violations); and under *Knick v. Township of Scott* 139 S.Ct. 2162 (2019) (owners no longer need to exhaust state-court remedies before they file a Fifth Amendment takings claim in federal court); to challenge the Defendants' ("Lewis County") acts, orders,

policies, practices, regulations, customs and procedures, which have deprived the Malleises of their property without just compensation.

1.2.    As set forth in this Complaint, the acts, orders, policies, practices, regulations, customs, and procedures of Lewis County were the cause of, and the moving force behind, the federal and state constitutional violations in this case.

1.3.    The Malleises also seek judgment against Lewis County for their unlawful retaliatory and selective enforcement of these same acts, orders, policies, practices, regulations, customs, and procedures which caused undue harm and emotional distress.

1.4.    The Malleises also seek a judgment awarding damages and compensatory damages for the taking (regulatory and otherwise) of their property without just compensation.

1.5.    The Malleises seek a judgment awarding damages and compensatory damages for the undue harm and emotional distress caused by Lewis County.

1.6.    The Malleises also see an award of their reasonable costs of litigation, including attorneys' costs and fees, pursuant to 42 U.S.C. § 1988 and other applicable law.

## II.    PARTIES

2.1.    Plaintiffs re-allege the allegations of paragraphs 1.1 through 1.6 above, as if fully set forth herein.

2.2.    The Plaintiffs in this action are Joseph and Shelly Malleis (the "Malleises"). The Malleises are the property owners of the subject matter real property, which is before this court.

2.3.    The Defendants in this action are Lewis County, a Washington State County, and the Lewis County Community Development Department ("LC Comm. Develop. Dept.", a Washington State, Lewis County governmental entity). The LC Comm. Develop. Dept. was responsible for reviewing the Malleises' Master Site Review (MSR24-0462) which the Malleises submitted on June 5, 2024 and the LC Comm. Develop. Dept. denied in its entirety.

## III.    JURISDICTION AND VENUE

3.1.    Plaintiffs re-allege the allegations of paragraphs 1.1 through 2.3 above, as if fully

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 2 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

set forth herein.

3.2.    This action arises under the Fifth Amendment of the Unites States Constitution's taking clause of private property; Article 1, Section 16 of the Washington State Constitution; and 42 U.S.C. § 1983.  As such, jurisdiction is conferred on this court pursuant to 28 U.S.C. § 1331, and § 1343.

3.3.    This Court has supplemental jurisdiction regarding the remaining state claim pursuant to 28 U.S.C. § 1367.

## IV.    FACTS

4.1.    Plaintiffs re-allege the allegations of paragraphs 1.1 through 3.3 above, as if fully set forth herein.

4.2.    In 1976 and again in 1996-97 Lewis County exempted over 8,000 linear feet of Butter Creek's shoreline, from the "shorelines of the state."

4.3.    The Malleises own two parcels of real property located at 110, 113 Shawnee Trail, Packwood Washington, Lewis County Parcel Nos. 011033012001 and 011033012002 (the "Property").  Together, the Property is approximately 1.45 acres and is zoned residential.

4.4.    The Malleis property's shoreline along Butter Creek is included in Lewis County's exempted 8,000 linear feet of "shorelines of the state."

4.5.    On June 5, 2024, Petitioners submitted a Master Site Review ("MSR") to Lewis County Planning Department, for approval/permitting of:

a.    Gravel/fill

b.    Tree/dead tree removal

c.    RV sites

d.    Restoration of historical pathway

4.6.    **See Complaint Exhibit 1** (MSR, June 5, 2024).

4.7.    Preston Pinkston in the Lewis County Planning Department reviewed the Malleises' MSR and ultimately, denied the MSR in its entirety (based on applying the Lewis County Master Shoreline Plan, and the Washington State Shoreline Management Act).  *See*

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 3 of 18

**Complaint Exhibit 2** (Pinkston denial letter, April 11, 2025).

4.8.    The Malleises filed a timely Appeal before the Lewis County Hearing Examiner on April 21, 2025.  ***See* Complaint Exhibit 3** (*Notice of Appeal*).  The Hearing Examiner held an open records hearing on the Malleises' appeal on December 12, 2025.  Lewis County Deputy Civil Prosecutor Karin Phomma appeared on behalf of Lewis County and attorney Eric G. Carlson appeared on behalf of the Petitioners.

4.9.    During the December 12, 2025 hearing, the parties elected not to present witnesses and present testimony, and agreed to rely on the pleadings presented in advance of the hearing.  The reason for this is, as stated on record, the <u>Hearing Examiner did not have the authority to rule on these issues, because the matters were outside the scope of the Hearing Examiner's jurisdiction</u>.  That is, this challenge presented by the Malleises fell within the Superior Court's jurisdiction under the U.S. Constitution and Washington State's Constitution.

4.10.    The Hearing Examiner's Decision dated December 29, 2025, denied the Malleises' appeal, stating they have not met their burden of demonstrating the decision by the County was in error.

4.11.    The Hearing Examiner erred in his Decision for the following reasons.

4.12.    **<u>Ground Leveling/fill Ruling</u>**: *Excess fill to be removed.*  Despite the facts presented (by the Malleises) from the onset of this allegation, the Malleises never exceeded the amount of fill required for backfilling of the new shop and the septic installation.  Moreover, the Hearing Examiner erred in his decision because <u>he has no jurisdiction to rule on this subject matter pursuant to RCW 90.58.020(7) (the shoreline is an area resulting from alterations of the natural condition of the shoreline and shoreland of the state and thus no longer meets the definition of "shorelines of the state" and therefore shall not be subject to the provisions of Chapter 90.58 RCW)</u>.

4.13.    **<u>Tree/dead tree removal Ruling</u>**: *If the Malleises have subsequently provided appropriate replanting the need for mitigation may be resolved.*  The Malleises can only conclude from the LCHE's statement above that this issue has now been resolved.  Even so, the Hearing Examiner erred in his decision because <u>he has no jurisdiction to rule on this subject</u>

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 4 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

matter pursuant to RCW 90.58.020(7) (the shoreline is an area resulting from alterations of the natural condition of the shoreline and shoreland of the state and thus no longer meets the definition of "shorelines of the state" and therefore shall not be subject to the provisions of Chapter 90.58 RCW).

4.14.    **RV Sites Ruling**: *RV hookups to be removed.*  The Hearing Examiner erred in his decision because he has no jurisdiction to rule on this subject matter pursuant to RCW 90.58.020(7) (the shoreline is an area resulting from alterations of the natural condition of the shoreline and shoreland of the state and thus no longer meet the definition of "shorelines of the state" and therefore shall not be subject to the provisions of Chapter 90.58 RCW).  More importantly, the County Code Compliance Department **Does Not** address or enforce electrical violations; the County states all electrical work is under the jurisdiction of the Department of Labor and Industries (*See* email string, dated December 9 2025).  It's important to note the Dept. of Labor and Industries does not enforce alleged building or zoning violations; they will investigate an alleged violation only if it's an **unpermitted** electrical matter.  The LCHE erred in his decision on this matter because 1) he has no jurisdiction to rule on it; and 2) the County itself does not enforce alleged electrical violations.  *See* **Complaint Exhibit 4** (email correspondence from the Lewis County Code Enforcement Dept and the Dept. of Labor and Industries).

4.15.    **Restoration of historical pathway Ruling**: *Stairways are to be removed.* The Hearing Examiner erred in his decision because he has no jurisdiction to rule on this subject matter pursuant to RCW 90.58.020(7) (the shoreline is an area resulting from alterations of the natural condition of the shoreline and shoreland of the state and thus no longer meet the definition of "shorelines of the state" and therefore shall not be subject to the provisions of Chapter 90.58 RCW).

4.16.    **RCW 90.58.020(7**) explicitly provides:

> *Alterations of the natural condition of the shorelines and shorelands of the state shall be appropriately classified and these classifications shall be revised when circumstances warrant regardless of whether the change in circumstances occurs through man-made causes or natural causes. Any areas resulting from alterations of the natural condition of the shorelines and shorelands of the state no longer meeting the definition of "shorelines of the state" **shall not be subject to the provisions of chapter 90.58 RCW**.*

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 5 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

Emphasis added.

4.17.    Beginning in approximately 1976, Lewis County opted this particular shoreline of Butter Creek out of the Shoreline Management Act of 1971, to perform the revetment work along Butter Creek, beginning at the confluence of the Cowlitz River, *running upstream about 8,100 linear feet.  *See* **Complaint Exhibit 5** (Lewis County Exemption of Butter Creek from Shoreline Management Act Substantial Development Permit Requirement, dated August 30, 1976).

4.18.    The 1976 and subsequent 1996-1997 revetment work of Butter Creek permanently altered the natural condition of the shoreline by eliminating it.  Therefore, this portion of Butter Creek is not subject to the provisions in the Shoreline Master Act of 1971, nor the Lewis County Shoreline Master Program (revised in 2021) because it is an area "resulting from alterations of the natural condition of the shorelines and shorelands of the state [and] no longer meet[s] the definition of "shorelines of the state" [and therefore] shall not be subject to the provisions of chapter 90.58 RCW."  *Id*.

4.19.    Further, if there is any doubt the County did not permanently alter the Butter Creek shoreline when it installed the revetment, one only needs to review the Special Prosecutor Report by Barnett N. Kalikow, J.D. *See* **Complaint Exhibit 6** (*Costs and Causes – Lewis County Damage Repair: the 1995 and 1996 Floods, 1998*).  Incidentally, Lewis County Code Chapter 17.10.001 "A" definitions define *Alteration* as follows: "'Alteration,' as it relates to Chapter 17.38 LCC, Critical Areas, means a human-induced action which materially affects a regulated critical area, such as a physical change to the existing condition of land or improvements containing, but not limited to, construction, clearing, filling, and grading (emphasis added)."  In other words – a *revetment*.

4.20.    Moreover, the special prosecutor pointed out that Lewis County failed to do any surveying or engineering for the construction of the 1995-96 revetment on Butter Creek.  On page 16 of the report, he stated:

/

//

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                Page 6 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

**Recommendation**: It is irresponsible for the county to do a half-million-dollar project, which High Valley 8 / Serenity Acres was, without any survey or mapping.  A survey of the work area could have been performed and stakes accurately planted in an afternoon using county personnel at virtually no costs.  This should be a matter of course for any construction project unless time is of such importance that a few hours will make a real difference to life or property.

4.21.    The special prosecutor's 25-page report with appendices shows the Butter Creek Shoreline has been permanently altered by man-made causes and therefore Butter Creek is no longer categorized as "shorelines of the state" as provided by the statute.  That means neither Lewis County nor the Hearing Examiner can apply the Shoreline Management Act and the Lewis County Shoreline Master Plan to the Malleises MSRs.  In other words, Lewis County was wrong to deny the MSRs applying the Lewis County Shoreline Master Plan as a legal basis in its denial.  Moreover, the Hearing Examiner had no authority to deny the appeal because the appeal does not fall under his jurisdiction.

4.22.    Therefore, the 8,100+ linear feet portion of Butter Creek where the County built and rebuilt a 60-foot revetment retaining wall is no longer subject to RCW 90.58 – as the *natural condition of the shoreline* no longer exists and no longer meets the definition of as a shoreline of the state.  That means the basis the County relied upon to deny the Malleises MSRs is not supported by law.

4.23.    The issue of whether the 8,000+ linear feet of Butter Creek is a shoreline of the state (it is not) was not ruled on by the Hearing Examiner and therefore is outside any pending appeal of the Hearing Examiner's decision to Lewis County Superior Court, which sits as a quasi-appellate court.  Therefore, that issue is not before the Lewis County Superior Court as it is not sitting as a trial court.

4.24.    In 2025 the Malleises purchased a lot, located nearby in High Valley, Lot #6.  This lot is also adjacent to Butter Creek.  Lewis County also stated the Shoreline Management Act and the Master Shoreline Plan (Lewis County) applies to this lot as well.  Shortly after purchasing this lot, Lewis County notified the Malleises they would not be able to do anything with the lot.  To wit, no clearing of trees, no adding any leveling fill, no building – nothing.  And yet, this lot is within a development that was short-platted (and thus previously approved by

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

Lewis County) for the purpose of building residences. Lewis County's unlawful application of regulations, despite the fact Lewis County took the adjacent Butter Creek shoreline out of the "shorelines of the state" back in 1976 and reaffirmed the same in 1996, constitutes a total regulatory taking (*Lucas* taking) of the property. Lewis County's unlawful actions are the proximate cause to the Malleises having lost the entire economic value of the lot. Curiously, Lewis County has allowed other lot owners to develop their lots – even those lots that also are withing the setback distance from the Butter Creek shoreline. The adjacent lot owners have made improvements such as tree removal, adding fill, and the construction of carports and other structures. Therefore, even if Lewis County had not taken this stretch of Butter Creek out of the "shorelines of the state," it is discriminating against Malleises – private property owners – by applying one set of "rules" to them and another to the neighbors – all within the same class and who have the same standing.

## V.    COUNT 1 – FEDERAL TAKINGS CLAUSE

**(Fifth Amendment, United States Constitution; 42 U.S.C. § § 1983, 1988)**

5.1.    Plaintiffs re-allege the allegations of paragraphs 1.1 through 4.24 above, as if fully set forth herein.

5.2.    Lewis County's actions are a *seizure* of Plaintiffs' property without just compensation, and in violation of the Fifth Amendment of the United States Constitution.

5.3.    This claim is being made against all Defendants pursuant to 42 U.S.C. § § 1983 and 1988.

5.4.    The Fifth Amendment of the United States Constitution, made applicable to the States via the Fourth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking of private property by Lewis County. *See Knick v. Township of Scott*.

5.5.    Lewis County's unlawful and unjust enforcement of regulations have caused an unlawful taking of Plaintiffs' property without providing just compensation.

/

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 8 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

## VI.    COUNT II – WASHINGTON STATE TAKINGS CLAUSE

### (Article 1, § 16, Washington State Constitution)

6.1.    Plaintiffs re-allege the allegations of paragraphs 1.1 through 4.24 above, as if fully set forth herein.

6.2.    Lewis County's actions are a seizure of the Malleises' property without just compensation, all in violation of Article I, § 16 of the Washington State Constitution.

6.3.    As outlined above, Lewis County has taken, by way of a *regulatory taking*, the Malleises' property, without providing just compensation.

6.4.    This claim is made against all Defendants pursuant to 28 U.S.C. § 1367; and

6.5.    Article I, § 16 of the Washington State Constitution of 1889, which is a provision and right requiring the payment of just compensation upon a taking of private property by Lewis County.  *Knick v. Twp. of Scott*.  Lewis County has not offered any compensation to the Malleises for the taking of their land, thereby depriving the Malleises of their constitutional rights in violation of Article 1 §16 of the Washington State Constitution.

6.6.    As a result of Lewis County's actions and failure to pay just compensation, the Malleises have been injured and suffered damages in an amount to be determined at trial.


## VII.    ARGUMENT

7.1.    The Washington Supreme Court **recently overturned** years of precedent and made it more difficult for parties to claim that government regulation has affected an unconstitutional "taking" of their property requiring compensation.  The Washington Supreme Court rejected its prior holdings on regulatory takings, as set forth in *Manufactured Housing Communities of Washington v. State.*

7.2.    Consistent with federal law, a regulatory taking claim in Washington can now no longer be based merely on the alleged destruction of an attribute of property ownership.  Rather, Washington courts will now recognize only two narrow categories of per se regulatory takings: (1) where government regulation requires a property owner to suffer a permanent physical invasion of his or her property or; (2) where regulations completely deprive an owner of all

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

economically beneficial use of his or her property.

7.3.    Lewis County's unlawful enforcement of its regulations has caused the Malleises to suffer a permanent physical invasion.  Although Lewis County has not literally or physically seized the Malleises' property, its regulations are so restrictive that, as shown in **Complaint Exhibit 7**, they effectively deprive the Malleis of half of their land.  Under Lewis County's regulations—and its position that the Shoreline Management Act of 1971 applies to the Malleis property – the Malleises are entirely barred from using this portion of their land for any purpose other than planting *native vegetation*. (**Complaint Exhibit 7** is a Lewis County GIS mapping from their online site, with the implied 150' setback.)

7.4.    Defendants have stripped away more than half of the Malleis' land in their attempts to enforce unlawful regulations - when they have no such authority to do so, as discussed below.

7.5.    Additionally, Lewis County is unjust in its efforts to enforce the Shoreline Management Act of 1971 ("SMA"), as discussed below:

A.    **Estoppel:  Revetment of Butter Creek**

**RCW 90.58.020(7**) explicitly provides:

> *Alterations of the natural condition of the shorelines and shorelands of the state shall be appropriately classified and these classifications shall be revised when circumstances warrant regardless of whether the change in circumstances occurs through man-made causes or natural causes. Any areas resulting from alterations of the natural condition of the shorelines and shorelands of the state no longer meeting the definition of "shorelines of the state" shall not be subject to the provisions of chapter 90.58 RCW.*

Emphasis added.

i.    Beginning in approximately 1976, Lewis County opted this particular shoreline of Butter Creek **out** of the Shoreline Management Act of 1971, to perform the revetment work along Butter Creek, beginning at the confluence of the Cowlitz River, *running upstream about 8,100 linear feet.

ii.    The 1976 and subsequent 1996-1997 revetment work of Butter Creek permanently altered the natural condition of the shoreline by eliminating it.  Therefore, this portion of Butter Creek is not subject to the provisions in the Shoreline Master Act of 1971, nor

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                  Page 10 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

the Lewis County Shoreline Master Program (revised in 2021) because it is an area "resulting from alterations of the natural condition of the shorelines and shorelands of the state [and] no longer meet[s] the definition of "shorelines of the state" [and therefore] shall not be subject to the provisions of chapter 90.58 RCW." *Id*.

iii.    Further, if there is any doubt the County did not permanently alter the Butter Creek shoreline when it installed the revetment, one only needs to review the Special Prosecutor Report by Barnett N. Kalikow, J.D. (attached as Exhibit 8): Costs and Causes – Lewis County Damage Repair: the 1995 and 1996 Floods, 1998.  Incidentally, Lewis County Code Chapter 17.10.001 "A" definitions define Alteration as follows: "'Alteration,' as it relates to Chapter 17.38 LCC, Critical Areas, means a human-induced action which materially affects a regulated critical area, such as a physical change to the existing condition of land or improvements containing, but not limited to, construction, clearing, filling, and grading (emphasis added)." That is a revetment.

iv.    Although the WAC 173-18-250 designates Butter Creek as a shoreline of the state – it does not take into account that the revetment changed a portion (8,100+ linear feet) of Butter Creek by altering the natural condition of the shoreline.  The statute requires the state to make this determination any time *any* alteration is made to a shoreline.  Instead, because the County never did any engineering or surveying (as the special prosecutor points out), it never triggered the provisions required in the statute.  That is on the County.  Even so, it does not negate the fact the County cannot have it both ways:  To wit, it cannot take the Butter Creek shoreline out of the "shorelines of the state" in 1976 and again in 1996-97 and then turn around today and pretend the shoreline is magically back in the category of the "shorelines of the state" because it wants to go after private landowners.  Therefore, the County is *estopped* from taking the position that the Washington State Shoreline Management Act, as amended (1971) and the Lewis County Shoreline Master Plan, (2021) applies now.

v.    Therefore, the 8,100+ linear feet portion of Butter Creek where the County built and rebuilt a 60-foot revetment retaining wall is no longer subject to RCW 90.58 – as the *natural condition of the shoreline* no longer exists and no longer meets the definition of as a shoreline of

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 11 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

the state.  That means the basis the County relied upon to deny the Malleises MSRs is not supported by law and therefore the Malleises prevail on their Appeal as a matter of law. *See* **Complaint Exhibit 8** - "*Petition for Review of Land Use Appeal under Chapter 36.70C RCW*, Lewis County Sup. Ct. Case No. 26-2-00128-21."

7.6.    It is undisputed that the Malleis have several structures on their property, such as their home (1999), a shop (2023) and a small shed (yet to be permitted).  However, by looking at **Complaint Exhibit 8**, it's clear how the Malleises have lost more than half of their property due to over-regulation and unlawful enforcement of the SMA.  This is a clear *regulatory taking* of the Malleis' property, and has been taken without just compensation.

## VIII.    ADDITIONAL CLAIM FOR UNDUE HARDSHIP AND EMOTIONAL DISTRESS: SELECTIVE ENFORCEMENT, HARASSMENT & UNLAWFUL RETALIATION

8.1.    Although the matter of selective enforcement is not technically a legal argument, the Petitioners find it necessary to bring it to the court's attention.  The Malleises understand that the Lewis County Dept. of Code Compliance is complaint-driven, meaning, mostly neighbors reporting on each other for alleged violations.  The Department then has *discretionary* privilege to decide what will be enforced.  Complaints are made to Code Compliance Dept. through this procedure, and alleged violations can also be discovered by a department official stumbling upon a violation.  A reasonable person would believe that if the same exact violation occurred by two separate property owners, the same enforcement would be applied, as this is "equal application of the law."  However, that is not the case with Lewis County.

8.2.    The Malleises strongly believe that Lewis County (the "County") is unlawfully retaliating against them for challenging the denial of their Master Site Review ("MSR24-0462"); this MSR was submitted to the County on June 5, 2024.  Lewis County then denied on April 11, 2025, and the Malleises appealed to the Lewis County Hearing Examiner, on or about April 21, 2025.  After the Malleises' appeal was denied, they brought a Land Use Petition Act ("LUPA")

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                Page 12 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

against the county (Lewis County Superior Ct. 26-2-00128-21).  This action is still pending, with a May 5, 2026 hearing date scheduled to consider the Respondent's Motion to Dismiss.

8.3.    During the appeal process, and continuing to the present, Lewis County has not relented in its enforcement efforts and is now attempting to shut down the Malleises' single RV listing on Hipcamp and their Loft listing on Airbnb.  This information came to light while Mrs. Malleis was reviewing files obtained from Lewis County's permitting and code compliance departments.  While reviewing the files, she came across two "Team Messages" that appear to have been retrieved from Preston Pinkston's message folder (**see Complaint Exhibits 9 and 10, respectively**).  These messages suggest that Lewis County personnel view their ongoing actions against the Malleises with a degree of humor.  More concerning, however, is a statement in **Complaint Exhibit 10** that appears to indicate an effort to find a way to shut down both operations.

8.4.    Just recently, on April 3, 2026, the Malleises received the attached **Complaint Exhibit 11** – Letter entitled "SUMMONS" from the Lewis County District Court.  The letter also included a Notice of Infraction citation, which cited as a violation statute **L15.05.0201(A) – VIO International Building Code**.  The Malleises have been trying to resolve this infraction with the Lewis County code compliance department.  On or about April 8, 2026, the Malleises had a phone call with Smokey Padgett ("Padgett"), the code compliance officer who issued the infraction.  He stated that he believed that their MSR (25-0688) had expired and therefore, that was the reason he issued the infraction.  Mr. Padgett was unaware that it was agreed with Preston Pinkston ("Pinkston") in the Planning Department that the MSR was on hold pending the outcome of the appeal.  Mrs. Malleis confirmed in writing with Pinkston (and a cc to Padgett) that the MSR was in fact still on hold.  Mrs. Malleis replied in the email to Padgett, asking that, based on the April 8 phone call with him, that the infraction be stricken with the Lewis County District Court.  Recently, Minday Brooks, at the Lewis County Community Development Department, confirmed the infraction will remain.  This was not the case Smokey presented to the Malleises when he stated he issued the infraction because he believed the MSR had expired.

8.5.    Lewis County's unlawful and continued retaliatory enforcement of regulations to

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                     Page 13 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

which they have not authority to impose (as outlined above) has taken a toll on the Malleis' health.  One night in September of 2025, Mr. Malleis began to feel "pressure" on his chest, which caused him more anxiety – for he feared that he was having a mild heart attack.  At approximately 10pm on September 9 or 10, 2025, the Malleises drove to Morton Hospital – emergency room.  Thankfully, it turned out that Mr. Malleis was suffering from a type of reflux, due to the **amount of stress** he was enduring.

8.6.    These continuous actions by Lewis County are clear and blatant **harassmen**t because 1) several of the county's "allegations" of land use violations are in litigation; and 2) – the Malleises have an active Master Site Review (MSR 25-0688), submitted for the purposes of permitting the Loft.  Why is Lewis County so intent on shutting down operations at the Malleises' Loft when an active MSR is already in place to bring the property into compliance? Why would Lewis County issue an infraction if the Malleises are in compliance with the August 8, 2025 Notice of Violation?  Furthermore, Lewis County is aware of numerous unpermitted short-term rentals in Packwood – as well as other land use violations – yet appears to take no enforcement action against those property owners.

8.7.    The Malleises have solid evidence that Lewis County is not taking action against other property owners with the same *alleged* violations.  The examples below show how Lewis County is ignoring comparable situations while continuing to pursue ongoing, targeted retaliatory enforcement against the Malleises:

a.    **Peter's Inn**

Two complaints filed for illegally running an RV park with less than one acre, and without a Special Use Permit (RV Park = renting to more than 1 camper) - Listing for these RV spots was provided by a local realtor, Tracy Croshaw.

A complaint was filed with LC Code Enforcement on October 27, 2025. The property owner then submitted an MSR on or about November 26 2025, in an attempt to obtain the required Special Use Permit for running an RV park.  On or about December, 2025, Lewis County denied the MSR, but no enforcement action was taken.

A second complaint was filed with Lewis County Code Enforcement on January 23, 2026.  Case notes indicate new complaint was submitted, but there has been NO enforcement on this property owner.  Mrs. Malleis sent an email to Kirsten Wecker at Lewis County on March 11, 2026 – inquiring why nothing was being enforced; Mrs. Malleis has received no reply, and to date, this property owner is still running an "RV Park".

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 14 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

b. **141 Holiday Lane**

The first complaint was initiated by the County when it was discovered sometime in October, 2025 that the owners had a carport installed, electrical hookups, and performed work in the shoreline setback and channel migration zone; the complaint was sent from Preston Pinkston in the Lewis County Planning Dept to code compliant on or about October 13, 2025.  A letter was then sent by the County to the property owner on or about October 20, 2025.  The County's case notes indicate that the owner stated he would take down the carport after wintertime, but as of this date – the structure remains in place.  The case notes don't include any other the other violations – only the carport.

A second complaint was filed on or about February 19. 2026.  The case file and notes indicate that a prior case was opened (CE25-00130) and proceeded to close the 2.19.26 complaint.  No action has been taken in this matter (as of this date) and the structure and other violations remain without enforcement.

- Lewis County Code Enforcement does not enforce "electrical violation" complaints; the Dept. of Labor & Industries enforces electrical violations.  However, L&I does not enforce electrical violations that are **jurisdictional**; it only enforces issues that pertain to permitting.

**Question:**  Why is Lewis County demanding the Malleieses remove their electrical hookups but allowing them to remain on this property?

c.      **143 Holiday Lane**

The first complaint on this property owner was submitted to the County on August 4, 2025.  The complaint cited many violations, such as illegal placement of buildings/structures, illegal installation of electrical, and septic dumping.  This property owner has received two (2) notices of violations – one dated September 11, 2025 (Building violation) and one dated December 9. 2025 (Septic violation). The County's case notes indicate that there have been several site visits by the code compliance officers.  The notes also indicate that the property owner was informed that her lot is a "recreational lot" – meaning – she can't live there.  The County was informed by Mrs. Malleis that the property owner does in fact live on her lot full-time, and has been since July of 2025. As of today's date, the property owner is still living full-time on her recreational lot, and all structures on this lot remain in place - seven (7) months after the 9.11.25 Notice of Violation. Additionally, there is no septic on her property, and because this property owner is living there full-time, she is obviously hiding from plain view where her septic and gray water is going.

- Lewis County Code Enforcement does not enforce "electrical violation" complaints; that's up to the Dept. of Labor & Industries.  And come to find – L&I does not enforce electrical violations that are jurisdictional; it only enforces issues that pertain to permitting.

**Question:**  Why is Lewis County demanding the Malleieses remove their electrical hookups but allowing them to remain on this property? Why is Lewis County not enforcing their own code which requires removal of ALL structures on this lot? Why is P.R. Miller not receiving fines or infractions for non-compliance of the Notices of Violation(s)??  (Lewis County has not yet responded to Mrs. Malleis' recent public records request, which she filed over a month ago, therefore as of the filing of this Complaint, the above statements are true and correct.)

/

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                      Page 15 of 18

**ERIC G. CARLSON, P.S.**
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

8.8.    The three examples listed above represent only a small portion of what the Malleises uncovered while reviewing Lewis County's planning and code compliance records. The Malleises believe Lewis County is retaliating against them for challenging the denial of their 2024 Master Site Review.  It is also widely understood that many residents of Packwood have limited financial resources, and when faced with a code violation, they are often unable to contest it.  As a result, most individuals simply pay the fine, remove the structure, or otherwise comply with the Notice of Violation.

8.9.    The Malleises have neither requested nor expected "special treatment." However, they do expect the County to treat them fairly and enforce its regulations consistently, just as it does for other members of the community.  This has clearly not been the case here.  If the Malleises were part of a "protected group" under the Civil Rights Act, they would have more than sufficient evidence to support their claim.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

A.    Enter an order that Defendants have violated the Plaintiffs' constitutional rights by taking their property without just compensation;

B.    Enter an order for damages and/or compensation for the value of the property taken by Defendants;

C.    Enter an order for any and all damages available under federal law as applicable, including, but not limited to, an award for nominal and punitive damages;

C.    Award Plaintiffs their reasonable attorneys' costs and fees pursuant to 42 U.S.C. § 1988, and other applicable law; and

D.    Grant such other and further relief as is just and appropriate.

*** *** ***

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 16 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

Dated this 1st day of May, 2026.

_____
ERIC G. CARLSON, WSBA #56842
Attorney for Plaintiffs,
Joseph and Shelly Malleis

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 17 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com

## PLAINTIFFS' VERIFICATION

We, Joseph Malleis and Shelly Malleis, declare that we are the Plaintiffs in this action, that we have read the foregoing Complaint and know the contents thereof, and that the same is true of our own knowledge, except as to matters stated on information and belief, and as to those matters, we believe them to be true under the penalty of perjury of the laws of Washington State.

DATED THIS 1st day of May 2026.

_____
SHELLY MALLEIS

_____
JOSEPH MALLEIS

VERIFIED COMPLAINT & JURY DEMAND
RE REGULATORY TAKING OF
REAL PROPERTY                    Page 18 of 18

ERIC G. CARLSON, P.S.
605 SE Prospect Street, Chehalis, WA
360.269.5541 | ericgcarlson@gmail.com